# United States Court of Appeals
## For the First Circuit

No. 23-1675

UNIVERSITAS EDUCATION, LLC,

Plaintiff, Appellee,

v.

LILLIAN GRANDERSON, as successor to Jack E. Robinson, III,

Defendant, Appellant,

JACK E. ROBINSON, III,

Third Party Plaintiff,

v.

LOEB & LOEB LLP,

Third Party Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Montecalvo, Thompson, and Rikelman,
Circuit Judges.

Elizabeth N. Mulvey, with whom Jason N. Strojny and Libby, Hoopes, Brooks & Mulvey P.C. were on brief, for appellant.
Joseph L. Manson III, with whom Law Offices of Joseph L. Manson III was on brief, for appellee.

April 15, 2024

THOMPSON, **Circuit Judge**.    When Plaintiff Appellee Universitas Education, LLC ("Universitas") first initiated this lawsuit against Jack E. Robinson, III ("Robinson") in 2015, it sought damages against him for (among many other things) alleged violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  But a lot has happened since then -- most notably, Robinson died in November 2017.[1]

In the aftermath of Robinson's death, this case took a turn from the merits of Universitas' claims against him to a focus on finding a proper party to substitute into the case to act as a personal representative of his estate.  Eventually, Universitas landed on Defendant Appellant Lillian Granderson ("Granderson"), Robinson's elderly mother, as a proper party to substitute and filed two motions in the district court, one to sub her in, pursuant to Federal Rule of Civil Procedure 25(a), and the other to enter default judgment against her, pursuant to Federal Rule of Civil Procedure 55(b).[2]  The district court granted both.

---

[1] The record is not clear on the precise date of Robinson's death.  As will soon become evident, the record's lack of clarity on many things (not just the date of Robinson's death) will become a bit of a theme of today's appeal.

[2] For those unfamiliar with default judgments, such a judgment under Rule 55(b) is simply "a 'final disposition of the case and an appealable order' that has the same effect as a judgment rendered after a trial on the merits."  United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004) (citation omitted).  A default judgment can come into play, as (allegedly)

- 3 -

Now on appeal, Granderson argues the district court made some mistakes in granting Universitas' motion to substitute and motion for default judgment. After disentangling the (admittedly) complicated procedural history underlying the district court's decisions, we conclude that Granderson has a point, but only as to the motion for default judgment. Accordingly, we affirm the district court as to the motion to substitute and vacate the default judgment. Our reasons for doing so follow.

### The Procedural History[3]

On May 14, 2015, Universitas initiated this lawsuit against Robinson in the United States District Court for the District of Massachusetts, alleging RICO and supplemental state law claims. In essence, the complaint alleged that Robinson, a

---

was the case here, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" in the action. Fed. R. Civ. P. 55(a).

[3] Avid court watchers will know we usually start off with a detailed summary of the facts, before turning to how the case got to us (i.e., the procedural history). As this appeal concerns the ins and outs of party substitution and default judgments, however, the actual merits of the factual allegations against Robinson are not before us. We, accordingly, breeze past those factual allegations and lay out (very) briefly what Universitas' complaint alleges, before turning to what matters most to the issues on appeal: the (dense) procedural history. (Bear with us.)

lawyer himself, facilitated a former client's theft of over $30 million in life-insurance proceeds belonging to Universitas.

Robinson did not take these allegations lying down.  To the contrary, over the ensuing eighteen months, he defended himself through the filings of various motions, including a motion to dismiss, a motion to reconsider the district court's denial of that motion to dismiss, a motion to transfer the case to the United States District Court for Southern District of New York, and a motion to compel arbitration.  And he defended himself (literally) to the end when he died in November 2017.  On November 28, 2017, Seth Marcus ("Marcus"), Robinson's lawyer in the case, informed the district court and Universitas of Robinson's death through the filing of a Notice of Suggestion of Death.

Following Robinson's death, the district court converted an upcoming December 20, 2017 motion hearing on Robinson's then-still-pending motion to compel arbitration to a status conference to figure out how best to proceed.  The district court also ordered Universitas and Marcus to file a joint status report in anticipation of that status conference to give it a run-down of what issues remained in the case in light of Robinson's death.  Taking their cue from the district court, they did just that and filed a joint status report, which stated (among many other things) that a personal representative had not yet been appointed,

Universitas would file a motion to extend the time to file a motion for substitution until after it received notice of the personal representative's identity, and several of the pending matters before the district court could not be resolved without the appointment of a personal representative.

At the December 20, 2017 status conference, the district court stayed the case indefinitely until a personal representative for Robinson's estate was appointed. The district court also ordered Universitas and Marcus to file joint status reports on the first day of every month, starting on February 1, 2018, to keep it up-to-date on any personal-representative-related developments.

February 1, 2018 arrived and brought with it some welcome and relevant news. In Universitas' and Marcus' joint status report, Marcus indicated that he had spoken with Granderson, who informed him that Robinson had a Last Will and Testament ("the Will"), Robinson had named her as the executrix, she was still interviewing possible estate attorneys, and probate proceedings had not yet commenced. Marcus also indicated in the joint status report that he had received a call from Jeraldine Williams-Shaw ("Williams-Shaw"), a lawyer who had not yet been retained by Granderson but was investigating the extent of Robinson's estate in anticipation of likely being retained.

The next few months saw no further developments or updates on the personal-representative front.[4]  What those next few months did see, though, was the filing of several motions on Universitas' part.  It filed three motions to extend the time to file a motion to substitute, the first on February 21, 2018, the second on March 23, 2018, and the third on May 22, 2018.  The district court promptly granted each motion.

With no updates to move the case along, the district court scheduled another status conference for July 23, 2018.  At that status conference, Marcus informed the district court and Universitas that Granderson had decided not to initiate any probate proceeding for Robinson's estate, so no personal representative had been formally appointed.  With that new tidbit of information, it became clear to Universitas that, if it wanted to proceed with its lawsuit, it would need to petition a probate court to appoint a personal representative for Robinson's estate.  Accordingly, at the July 23, 2018 status conference, Universitas requested another extension to file the motion to substitute in order to give it time to initiate the relevant probate proceedings.[5]  As it had done

---

[4] Universitas and Marcus filed one more joint status report on March 2, 2018, indicating that neither of them had any update to report.  For reasons unclear to us from the record, no more joint status reports were filed after March 2, 2018.

[5] This status conference is the last time we hear from Marcus.

- 7 -

before, the district court granted Universitas the extension, this time until October 23, 2018.

The next few months came and went with no real progress -- in fact, quite the opposite.  Over the remaining months of 2018 and first two months of 2019, Universitas filed four status reports, informing the district court that it had indeed filed a creditor's petition in the Plymouth County Massachusetts Probate Court seeking the appointment of a personal representative for Robinson's estate, but that three separate lawyers had declined to be appointed the estate's personal representative.  In these status reports, Universitas also sought further extensions of the time to file a motion to substitute[6] and informed the district court that it would be filing a request for the district court to appoint a receiver,[7] pursuant to Federal Rule of Civil Procedure 66, to take custody of Robinson's assets.

Things picked back up on February 5, 2019, at which point the district court held a status conference with only Universitas and its counsel.  At the status conference, the district court got

---

[6] The record below is (again) unclear as to whether these requests were ever granted or denied.

[7] A receiver is an individual appointed by a court, and "the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it."  Goldfine v. United States, 300 F.2d 260, 263 (1st Cir. 1962) (citation omitted).

down to business and noted its reticence at appointing a personal representative or receiver itself, given the difficulty the Plymouth County Probate Court was having in finding somebody willing to take on the task. As an alternative, the district court suggested that, because discovery was complete, it "would entertain something in the nature of default process that consisted of the submission of a motion for summary judgment fully supported, followed by service on the likely beneficiaries of any estate that Mr. Robinson may have." The "impediment" with this approach, the district court noted, was that "in the absence of a personal representative, there's nobody here . . . -- that we know of -- to respond to a motion for summary judgment. And I would want to be sure that there was the equivalent of notice -- effective notice on those persons who otherwise might be expected to respond. That may be the statutory beneficiaries of any estate, either here or somewhere else. I just don't know where that somewhere else might be."

To bypass this pesky impediment, the district court suggested the following:

> That I permit say 45 days of discovery to see if you can find out who those people might be and identify them for purposes of service so that they get served with whatever motion for summary judgment is what I suggest, because that's giving me the factual materials. I kind of struggled with a motion to dismiss before. And then I'd feel fairly comfortable

> if they don't come forward and respond, and
> you have a well-founded basis for summary
> judgment to enter something like a default
> judgment.  It may be a failure to state -- it
> may be failure to prosecute or failure to
> defend their claims, but it's a default sort
> of issue, and then you can be on to the
> business of trying to execute on that
> judgment.

Universitas mulled it over and agreed with that plan of attack, and "only ask[ed] that the [district] [c]ourt continue to extend the deadline . . . for substitution."  The district court responded that it would do that, but it would take that matter up when Universitas' discovery was over because it "want[ed] to think about that" since "[t]here really isn't anybody to substitute now."

At the end of the status conference, the district court summarized its marching orders.  Discovery would be reopened until April 5, 2019, so that Universitas could "figure out who's who in the line of succession here or who it is that [it] would proffer as someone who can properly be said to have sufficient interests in the estate to provide some response or at least be notified of the response" and so that Universitas could "identif[y] [Robinson's] assets."  The stay the district court originally issued upon Robinson's death was extended until April 5, 2019, and Universitas was given a tentative June 3, 2019 deadline for filing its summary judgment motion.  Finally, the district court put an

April 12, 2019 status conference on the books to discuss post-discovery next steps.

In the following weeks, Universitas got straight to work. In a status report it filed in anticipation of the April 12, 2019 status conference, Universitas recounted all its efforts: (1) it served Granderson and Maxine Novak ("Novak"), Robinson's longtime companion and business partner, with subpoenas and notices of deposition; (2) while both Granderson and Novak moved to quash those depositions in the United States District Court for the Middle District of Florida, Granderson's motion to quash was quickly denied, so she was deposed on April 2, 2019; (3) during "Granderson's deposition, Universitas learned that Robinson had a will, which was filed with the probate court in Naples, F[lorida]" and that "Granderson was named as the personal representative of the estate;"[8] and (4) Universitas had obtained a copy of the Will, which indicated that property had been bequeathed to Granderson, Novak, and other previously unknown individuals, who Universitas would need more time to locate and serve. The status report also indicated that Universitas would be requesting extensions of the

---

[8] Once again, it is unclear to us why Universitas indicated it had only learned of the existence of the Will through Granderson's April 2, 2019 deposition, because it is nose-to-face plain from the record that Marcus informed both the district court and Universitas as early as February 1, 2018 that Robinson had a will and that Granderson was the named executrix.

discovery and summary judgment deadlines that the district court had previously imposed.

The April 12, 2019 status conference (attended only by Universitas) saw additional updates.   At the conference, Universitas explained to the district court that it had "made substantial progress in identifying the [W]ill and identifying assets."  Specifically, it noted that Robinson had taken out several life insurance policies before his death, totaling about $3 million, and a portion of those proceeds were to be paid to Shadow Ridge Properties, LLC ("Shadow Ridge"), a corporation of which Robinson and Novak each owned half.  The Will, Universitas explained, provided that Robinson's fifty-percent interest in Shadow Ridge would go to Granderson upon his death.

Universitas continued and spelled out other deposition-related developments.  As to Novak, it explained to the district court that her motion to quash was still pending, but it expected to be able to depose her soon.  As to Granderson, Universitas explained that it successfully deposed her and, during that deposition, she said she did file the Will in probate court in Florida.  Universitas also indicated that the Will provided that should Granderson be unwilling or unable to serve as the personal representative, two of Robinson's cousins, Cecily Ingram ("Ingram") and Eileen Heathington ("Heathington"), could serve in

her place[9] and that Heathington was present for Granderson's deposition.  Finally, Universitas told the district court that, at the deposition, it had "put [Granderson and Heathington] on notice that [it] would be filing a motion for summary judgment and that [it] would be serving it on them."[10]

Still unclear about the status of a personal representative, the district court followed up and asked, "Do you understand that Ms. Granderson or anyone else has actually been appointed to administer the estate?"  Universitas clarified that it was its understanding that no one had yet been formally appointed and Granderson had stated at her deposition that she did not initiate probate proceedings because Robinson had no assets.  Accordingly, the district court noted that "the administration of the estate, at least under these circumstances, is open to question" and granted Universitas extensions of the discovery and summary judgment deadlines in order to give it more time to find the appropriate personal representative.

---

[9] Per the Will, should Granderson be unable or unwilling to serve as the estate's personal representative, the personal representative shall be Ingram and, if she is also unable or unwilling, Heathington.

[10] As Williams-Shaw (the lawyer who had spoken with Marcus to say she had been mulling over whether she'd be representing Granderson in the Florida probate matter) represented Granderson at the deposition, Williams-Shaw was also put on notice of the upcoming motion for summary judgment.

The next few months passed by without much to report -- that is, until July.  On July 8, 2019, Granderson made her first appearance (of, eventually, quite a few appearances) on the district court's docket.  She filed pro se,[11] as a non-party to the case,[12] an affidavit of hers, the same one that she had also filed in the United States District Court for the Middle District of Florida.  The affidavit more or less informed the district court that she had been cooperative with Universitas' subpoena; she submitted, in anticipation of her deposition, all the documents that she had in her possession that were addressed to Robinson; she informed Universitas at her deposition of the Will; Novak had told her that Shadow Ridge had no assets, so Granderson decided not to initiate any probate proceedings; and she viewed Universitas' continued efforts to question her as harassment.

Two additional developments occurred in July 2019.  First, the district court extended the discovery and summary judgment deadlines to July 26, 2019 and September 3, 2019, respectively.  Second, Universitas finally succeeded in deposing

---

[11] For the uninitiated, "pro se" is just a fancy Latin term given to litigants "who do[] not retain a lawyer and appear[] for [themselves] in court."  Fed. Deposit Ins. Corp. v. Anchor Props., 13 F.3d 27, 31 (1st Cir. 1994) (quoting Pro Se, Black's Law Dictionary (6th ed. 1990)).

[12] Recall Universitas still had not yet filed a motion to sub her (or anyone, for that matter) into the case.

Novak on July 25, 2019. During her deposition, she indicated that
Shadow Ridge had no substantial assets remaining, Shadow Ridge had
received about $2 million in proceeds from Robinson's life
insurance policies, and Granderson had received slightly less than
$1 million of those proceeds, as Robinson had left his ownership
interest in Shadow Ridge to Granderson.[13]

        With Novak's deposition now complete, Universitas turned
its attention to its upcoming summary judgment deadline and timely
filed its motion and supporting documentation on September 3,
2019.[14] Nevertheless, that motion went unadjudicated as the case

---

[13] During July 2019, Universitas was also engaging in
litigation against Heathington in the United States District Court
for the Middle District of Florida regarding its attempts at
deposing her.

[14] In its briefing to us, Universitas asserts that, at the
time of filing, it "remitted a copy of the Motion for Summary
Judgment to Ms. Novak and informed Ms. Granderson of the Motion."
There is evidence in the record to suggest that Novak was given a
copy of the summary judgment motion, and that Granderson was
informed that a summary judgment motion would be forthcoming.
There is, however, no evidence in the record that the summary
judgment motion ever made its way to Granderson. Rather, the
record shows the opposite. The certificate of service for each
summary-judgment-related filing only stated that it was filed
through the district court's electronic filing system. But, as no
party had yet been substituted into the case, no one could have
been served through that system. Moreover, the summary judgment
motion itself indicated that Universitas was unable to comply with
the district court's local rule requiring conference with the
opposing party prior to the filing of any motion because "Mr.
Robinson is deceased and there is no representative for his estate.
Therefore, there exists no party with whom counsel for Universitas
could confer prior to the filing of this motion." Finally, email
correspondence between Universitas' lawyer and Williams-Shaw

went essentially dead for the next year or so with no more filings or activity of any kind on the docket (for reasons, again, unclear to us).[15]

The case was briefly brought back to life in the summer of 2020, with two notable developments.  First, Granderson made her second appearance on the docket on June 2, 2020 with a pro se motion to dismiss for lack of subject matter jurisdiction, which she filed as a non-party to the case as she did before.  While not particularly a beacon of clarity, the motion seems to be a copy of a motion filed with the United States District Court for the Middle District of Florida in an effort to prevent Universitas from deposing her again.  Second, Granderson was indeed deposed again on July 13, 2020, demonstrating that her efforts in Florida proved unsuccessful.  During that deposition, at which Granderson was

---

demonstrates that Universitas' lawyer could not serve Williams-Shaw through email because the motion and supporting documentation were too large.  To sidestep the issue, Universitas' lawyer asked Williams-Shaw what her preferred method of receipt would be. Williams-Shaw followed up and explained that she was not barred in Massachusetts nor had she entered an appearance in the case in the United States District Court for the District of Massachusetts, so she "decline[d] to accept delivery of legal papers, related to the above-referenced Massachusetts cause, for Mrs. Granderson." Nothing in the record suggests Universitas took any other steps to serve Granderson.

[15] It appears that in this interim period, Universitas and Granderson were engaging in litigation in the United States District Court for the Middle District of Florida relating to a second deposition of Granderson that Universitas wanted to conduct.

represented by Williams-Shaw, Granderson confirmed (among many other things) that she had received a check for a total of $923,747.60 from the life insurance policy proceeds from Shadow Ridge. And with those two developments, the case went (inexplicably) dormant again.

A flurry of activity in the 2021 new year awoke the case from its slumber. First up (and importantly), on January 26, Universitas filed a Request for Entry of Default ("the Request") against Robinson's estate (not Robinson specifically), pursuant to Federal Rule of Civil Procedure 55(a).[16] The Request itself argued that Robinson's estate had not responded to Universitas' summary judgment motion, and Granderson, as executrix with (alleged) knowledge of the proceedings, had "knowingly and intentionally . . . failed to defend this case." The Request also indicated that Universitas had sent a copy of the Request to Granderson.[17] Two days later, on January 28, 2021, the clerk of the district

_____

[16] We'll get into the weeds of entry of default and default judgments later down the line but, for now, just keep in mind that Federal Rule of Civil Procedure 55 governs the issuance of a default judgment and the rule envisions a two-step process, with the first step being entry of default under Rule 55(a) and the second step being entry of default judgment under Rule 55(b). See Fed. R. Civ. P. 55(a)-(b); see also $23,000 in U.S. Currency, 356 F.3d at 163 ("The rule distinguishes between the 'entry of default' under Rule 55(a) and 'judgment by default' under Rule 55(b).").

[17] Nowhere in the Request, however, does Universitas address the fact that no one, much less Granderson specifically, had been substituted into the case.

court entered default, but only as to Robinson (not specifically as to his estate or Granderson).[18]  That same day, a copy of the clerk's entry of default was mailed to Robinson at the last-known address on file for him, which was returned as undeliverable to the district court on February 8, 2021 (and obviously so, because Robinson had been dead for years by that point).

Second, on March 1, 2021, Universitas moved for default judgment against Robinson's estate, pursuant to Federal Rule of Civil Procedure 55(b), because Granderson had allegedly "taken no action to defend the case on behalf of Mr. Robinson's estate." The default judgment sought $92,031,830.55 from Robinson's estate. Granderson was quick to respond.  Just three days later, on March 4, 2021, Granderson made her third appearance on the docket and filed a motion to intervene in the case for the limited purposes of setting aside the entry of default and of moving to dismiss for lack of subject matter jurisdiction (essentially renewing her prior motion to dismiss for lack of subject matter jurisdiction). This time, though, Granderson was not proceeding pro se.  Rather,

---

[18] It is unclear as to why entry of default was entered against Robinson (personally) to begin with because it was clear from the Notice of Suggestion of Death filed with the district court back on November 28, 2017 that Robinson had passed and, prior to his death, he had defended the case vigorously, he (needless to say) couldn't have continued to defend himself after his death, and, in the wake of his departure, the case had turned into a Robinson-is-dead-there-is-no-defendant sideshow.

- 18 -

Lana Sullivan ("Sullivan") filed the motion for Granderson as her local counsel, and she entered her appearance only "for the limited purpose of intervening in this matter and moving to dismiss if this motion is granted."  Williams-Shaw, for whom Sullivan filed a separate motion for admission pro hac vice,[19] was also listed as counsel on the motion to intervene.  Disagreeing with Granderson's legal take, Universitas filed its opposition to Granderson's motion to intervene on March 18, 2021.

Notwithstanding these filings and flurry of activity, the case went dead-dead this time for reasons that (again) remain unclear.  Indeed, the next activity in the case came nearly thirteen months later in June 2022.  But that activity was merely two letters.  The first was a letter from Universitas to the district court inquiring about the status of its pending motions for summary judgment and default judgment since the district court had not acted on either of its pending motions.  The second was a counseled letter from Granderson (her fourth appearance on the docket), arguing that no party had been substituted into the case

---

[19] Deciphering that Latin lingo, seeking admission pro hac vice simply refers to the process by which a lawyer barred in the relevant jurisdiction moves for the admission of a lawyer not barred in that jurisdiction (but barred in another), so that the latter can appear in a particular case.  See Nationalist Movement v. City of Boston, No. 94-1827, 1994 WL 706022, at *1 (1st Cir. Dec. 19, 1994).

and Universitas' motion for default judgment should be denied. The case, nevertheless, remained dead-dead for several more months.

That is, until February 7, 2023, at which point the district court issued a sweeping order adjudicating all the pending motions. The district court's February 7, 2023 order started off with substitution. It noted that "[d]espite the initial challenges Universitas faced when trying to identify a successor, Universitas now contends that Ms. Granderson is an appropriate substitute under [Federal Rule of Civil Procedure] 25" and it agreed with that assessment. Accordingly, the district court ordered that the stay it had put in place back in 2017 be lifted,[20] that Universitas serve Granderson by March 31, 2023 with copies of the February 7, 2023 order and with copies of the Notice of Suggestion of Death that Marcus filed in November 2017. The district court further ordered that Universitas would have ninety days after March 31, 2023 to file a motion for substitution and to serve Granderson with that motion.

---

[20] The record is unclear as to whether this stay had already been lifted. As we laid out above, while the district court initially stayed the case indefinitely on December 20, 2017, it subsequently extended the stay only to April 5, 2019. Our review of the record reveals no further action regarding the stay on the district court's part after April 5, 2019 until this February 7, 2023 order.

Turning to its resolution of the pending motions, the district court's February 7, 2023 order started off with Granderson's pro se motion to dismiss for lack of subject matter jurisdiction and her counseled motion to intervene. The district court denied both, first, concluding that it did have subject matter jurisdiction and that, second, permissive intervention (as requested) was not appropriate because Granderson "does not seek intervention to respond to Universitas' motions nor does she seek to be substituted for Mr. Robinson."[21] As for Universitas' motion for summary judgment and motion for default judgment, the district court denied both because no party had been substituted into the case, but indicated Universitas could refile them at a later time. With all the pending motions now resolved, the February 7, 2023 order ended by scheduling a status conference for April 12, 2023 and ordering Universitas and "any person substituted [for Robinson]" to file a status report by April 7, 2023.

---

[21] The district court also ruled on Sullivan's motion for Williams-Shaw's admission pro hac vice. While the district court allowed that motion, it also terminated immediately thereafter both Sullivan's and Williams-Shaw's appearances on the docket. Recall that Sullivan and Williams-Shaw had filed their appearances "for the limited purpose of intervening in this matter and moving to dismiss if this motion is granted." Having denied the motion to dismiss and motion to intervene, the district court reasoned that the purpose for their appearances was no longer relevant and terminated their appearances.

Following the issuance of the February 7, 2023 order, the case proceeded rather quickly, in contrast to the previous periods of inactivity. A few weeks later, Universitas filed two status reports detailing its efforts at serving Granderson with copies of the February 7, 2023 order and Notice of Suggestion of Death, despite Granderson's apparent refusal to accept service from the service processor at her home in Florida. At the April 12, 2023 status conference held remotely, the district court ordered Universitas to file a motion to substitute by April 19, 2023 and allowed Universitas to refile its motion for default judgment no later than May 12, 2023. The district court indicated that it would "schedul[e] a hearing on the motion for default judgment promptly and w[ould] further address the execution of the judgment when appropriate." While it does not appear that Granderson was present for this status conference, Williams-Shaw was present and the district court "treat[ed] [her] participation . . . in this status conference as that of an interested party since no formal appearance as counsel of record has been accepted by the [c]ourt."[22]

---

[22] At this point, though, Robinson was dead and no one had yet been substituted in his place. There was, therefore, no one for whom Williams-Shaw could have entered an appearance as counsel of record.

Universitas promptly filed its motion for substitution on April 18, 2023 and served it upon Granderson. The district court granted the motion a few weeks later on May 8, 2023 because Granderson failed to file an opposition within fourteen days of service as required by local rules. See D. Mass. R. 7.1(b)(2). Notably, a counseled opposition[23] (Granderson's fifth appearance on the docket) did arrive on May 12, 2023, four days after the district court granted Universitas' substitution motion. Also on May 12, Universitas renewed its motion for default judgment. Then two weeks later on May 26, 2023, Sullivan, on Granderson's behalf, filed an opposition to Universitas' renewed motion for default judgment (Granderson's sixth and final appearance on the docket) and Universitas filed a reply to Granderson's opposition/motion to vacate substitution.

After a nearly two-month lull in activity, the district court denied Granderson's opposition/motion to vacate substitution, and granted Universitas' motion for default judgment, without scheduling any hearing on the motion for default judgment as it had previously indicated it would. Despite Granderson's six appearances and filings, the district court's

---

[23] Granderson's opposition was styled as both an opposition and a motion to vacate the district court's ruling ordering her substitution. It was filed by Sullivan, who Granderson had apparently retained again.

default judgment indicated that "Robinson . . . and his Estate, through substituted party Lillian Granderson, . . . failed to plead or otherwise defend in this action."  The default judgment then ordered that Universitas recover from Robinson's estate, through substituted party Granderson, the hefty sum of $92,031,830.55 (plus interest).

Not wanting to be on the hook for a $92 million bill, Granderson filed a timely appeal and brought the case to our bench.

## The Issues

Having made it out the other end of that procedural-history maze, we turn our attention now to the issues on appeal. To remind, Granderson challenges the district court's granting of Universitas' motion to substitute and motion for default judgment. We'll take each in turn, kicking things off with the motion to substitute, before ending with the motion for default judgment.

### *Motion to Substitute*

Granderson believes the district court was wrong to sub her into the case as a representative for Robinson's estate and hopes that we will reverse that decision.  She pins those hopes on three arguments, all relating to Universitas' alleged failure to follow the proper Rule 25(a) substitution process.  First, Granderson argues that Universitas should have filed its Rule 25(a) substitution motion within ninety days of it having learned of the

Will and of the fact that the Will named her executrix.  Second, she alternatively argues that Universitas should have filed its Rule 25(a) substitution motion within ninety days of Marcus having filed the Notice of Suggestion of Death.  And third, she argues it would be unfair to order her substitution in light of her advanced age and declining health.  To make sense of these arguments, we'd first better explain our standard of review and how the substitution process works when a party to a case dies.

Starting off with our standard of review, we review a district court's decision to substitute a party under Rule 25(a) for abuse of discretion.  See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A., 957 F.3d 943, 949 (9th Cir. 2020) (citing cases); cf. Potvin v. Speedway LLC, 891 F.3d 410, 416 (1st Cir. 2018) (reviewing substitution under Rule 25(c) for abuse of discretion).  An "error of law" is a prime example of an abuse of discretion, but such an abuse also "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Lech v. von Goeler, 92 F.4th 56, 63-64 (1st Cir. 2024) (citations and internal quotation marks omitted).

With our standard of review squared away, we turn now to the substitution process.  When a party dies during litigation and

the "claim survives the death of [the] party, Rule 25 'facilitates the substitution of a "proper party" to take the place of the decedent.'" <u>Marcus</u> v. <u>Am. Cont. Bridge League</u>, 80 F.4th 33, 43 (1st Cir. 2023) (quoting <u>Silas</u> v. <u>Sheriff of Broward Cnty.</u>, 55 F.4th 872, 876 (11th Cir. 2022)).  In relevant part, that Rule provides:

> (a) Death.
>
>> (1) *Substitution if the Claim Is Not Extinguished.*  If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
>>
>> . . .
>>
>> (3) *Service.*  A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4.  A statement noting death must be served in the same manner.  Service may be made in any judicial district.

Fed. R. Civ. P. 25(a)(1), (3).

Breaking this down, if a party dies and the claim(s) is not extinguished,[24] Rule 25(a) permits (but does not require) that

---

[24] Granderson did not contest below and does not contest here Universitas' assertion that some of its claims against Robinson (i.e., its civil RICO claims) survive his death -- an assertion

the district court order substitution of the proper party. Fed. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party." (emphasis ours)); see In re Baycol Prods. Litig., 616 F.3d 778, 783 (8th Cir. 2010) ("The language of [Federal Rule of Civil Procedure] 25(a)(1) is permissive. . . . The decision whether to substitute parties lies within the discretion of the trial judge and he may refuse to substitute parties in an action even if one of the parties so moves." (citation and internal quotation marks omitted)).

To effectuate that substitution, "[t]he rule [first] requires 'service of a statement noting the death,' but fails to specify upon who that notice must be served." Marcus, 80 F.4th at 43 (quoting Fed. R. Civ. P. 25(a)(1)).  The "who" of it all "is an

---

for which there is caselaw support.  See, e.g., Malvino v. Delluniversita, 840 F.3d 223, 231 (5th Cir. 2016) (civil RICO claims survive decedent's death); Faircloth v. Finesod, 938 F.2d 513, 518 (4th Cir. 1991) (same); McKinney v. Panico, No. 21-cv-04602, 2022 WL 2356476, at *3 (N.D. Ill. June 30, 2022) (same and collecting cases); Watchous Enters., LLC v. Pac. Nat'l Cap., No. 16-1432, 2021 WL 2311912, at *3 (D. Kan. June 7, 2021) (same); First Am. Corp. v. Al-Nahyan, 948 F. Supp. 1107, 1122 (D.D.C. 1996) (same).  Granderson has, therefore, forfeited and waived any argument to the contrary.  See Brox v. Hole, 83 F.4th 87, 96–97 (1st Cir. 2023) (characterizing appellants' failure to "develop [any] contrary argument" as waiver); Davila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007) ("The appellant did not present [the argument] to the district court. The argument is, therefore, forfeited.").

important facet of the rule because '[i]f the motion [to substitute a party] is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.'" Id. (alterations in original) (quoting Fed. R. Civ. P. 25(a)(1)). Our recent decision in Marcus makes clear that the statement noting the death "must be served upon the decedent's successor or personal representative before the 90-day clock starts to run." Id. at 43-44.

While the rule does not specify who qualifies as a "decedent's successor or representative" and, therefore, a "proper party" for substitution, Fed. R. Civ. P. 25(a)(1), caselaw provides some helpful examples, such as individuals who are "(1) the primary beneficiary of an already distributed estate, (2) named in a will as the executor of the decedent's estate, even if the will is not probated, or (3) the primary beneficiary of an unprobated intestate estate which need not be probated." In re Baycol Prods. Litig., 616 F.3d at 784-85 (internal citations omitted); see also Sinito v. U.S. Dep't of Just., 176 F.3d 512, 516 (D.C. Cir. 1999) ("Thus, we have held not only that an executor or administrator of a decedent's estate is a proper party for substitution, but also that the distributee of a decedent's estate may be a 'successor' of an estate that has been distributed and thus can be a proper party.").

- 28 -

Once service of the statement noting the death is effectuated, the last step in the process is the actual motion to substitute, which must (as just explained) be filed and served within ninety days.  Fed. R. Civ. P. 25(a)(1).

Against this backdrop, we turn now to Granderson's first argument against substitution, which goes like this:  By Universitas' own admission, it became aware that Granderson was the executrix of Robinson's Will at her April 12, 2019 deposition,[25] so it should have served her with a motion to substitute within ninety days of it having learned that information.  And by failing to do so within ninety days -- the argument goes -- Universitas should have been required to explain its multi-year delay pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), which provides, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Because the ninety-day clock had run and Universitas did not make a Rule 6(b)(1)(B) good-cause showing, the district court abused its discretion by allowing the substitution motion (at least in Granderson's view).

---

[25] As we mentioned above, Universitas was actually on notice of the Will and Granderson being the named executrix as of February 1, 2018.

- 29 -

This argument, as Universitas argues, falls short for several reasons.  To start, recall that Granderson did not timely oppose Universitas' substitution motion.  That means her argument was forfeited below.  See Crispin-Taveras v. Mun. of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) ("A party's failure, on account of ignorance or neglect, to timely oppose a motion in the district court constitutes forfeiture.").  And "[f]orfeited arguments are only considered for plain error." Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 86 (1st Cir. 2018).  But nowhere in her briefing does Granderson even attempt to map her argument onto plain error's four prongs, which require that "(1) an error occurred (2) which was clear or obvious . . . (3) affected [her] substantial rights [and] (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." Id. (second alteration in original) (citation omitted).  This necessarily means that she, in addition to forfeiting the argument below, has waived it on appeal.  See United States v. Colón-De Jesús, 85 F.4th 15, 25 (1st Cir. 2023).[26]

_____

[26] Even after Universitas raised this waiver-related defect, Granderson did not attempt to cure this defect in her reply brief. Rather, she argues that she did not forfeit her argument in the first place because it took her some time to retain local counsel to respond to the motion.  While we recognize that Granderson, as a Florida resident, might have had trouble retaining local counsel, we note that she ended up retaining the same local counsel, Sullivan, who had represented her earlier in this same litigation, and Granderson could have filed a pro se request for more time to

Furthermore, even were we to wink-wink these forfeiture and waiver issues away, her argument fails, again as Universitas argues, on the merits.  While Granderson argues that the ninety-day clock should have started running in 2019 when Universitas (supposedly) learned of the Will and Granderson's role as executrix, our decision in Marcus makes crystal clear that the ninety-day clock began to run when Robinson's successor or personal representative (here, Granderson)[27] was served with the statement noting his death.  Marcus, 80 F.4th at 43-44.  And nowhere does Granderson seriously contest that she was served with the statement noting Robinson's death on March 27 and March 28, 2023.  Consequently, Universitas had ninety days from then to serve her with the motion to substitute, which it then did by certified mail within that ninety-day window (as evidenced by the motion to substitute's certificate of service).[28]  So, in our view, no good-

---

respond, which we know she knew how to do as evidenced by her previously-made pro se filings in this same litigation.

[27] Nowhere in her briefing does Granderson contest that, as the named executrix in the Will, she was a proper party to be substituted.  In re Baycol Prods. Litig., 616 F.3d at 784 (indicating that a proper party for substitution includes an individual "named in a will as the executor of the decedent's estate, even if the will is not probated").

[28] While Granderson suggested below that she was not served with the motion to substitute, she does not reiterate that assertion anywhere in her briefing to us.  In addition to the motion to substitute's certificate of service, there are other indicators in the record to demonstrate Granderson was put on notice of the motion to substitute.  For example, as earlier noted,

cause showing was required because Universitas complied with Rule 25(a) and our caselaw, and the ninety-day clock had not yet expired.

Recognizing that our decision in Marcus is her argument's undoing, she attempts to distinguish that case because, there, it was the plaintiff who died, whereas here it was the defendant. Moreover, in Marcus she notes, there was also "no indication that [the substitute plaintiff] actually received notice" and "sat on h[er] hands while the 90-day window lapsed." Id. at 44 (second alteration in original) (citation and internal quotation marks omitted). In Granderson's view, because Universitas was aware of the proper party to substitute for many years, Marcus should not apply because it would be inequitable and would undermine federal courts' interest in finality to allow

---

Williams-Shaw was present at the April 12, 2023 status conference, at which the district court let everyone know that Universitas would be serving the motion to substitute by April 19, 2023. Additionally, a few days prior to the April 12, 2023 status conference, Universitas filed a status report, with its proposed motion to substitute as an attachment, in anticipation of that status conference. That status report also indicates it was served upon Granderson by personal service and certified mail. Finally, Granderson does not argue to us that she failed to timely respond to Universitas' motion to substitute because she was not served with it. Rather, she admits in her briefing to us that she did not timely respond because she had trouble retaining local counsel. She also asserts in her briefing to us that she was aware of the deadline by which she needed to respond to the motion to substitute, undermining any claim that she was not served or did not have notice of the motion.

Universitas "perpetual and unlimited control of the 90-day clock" by allowing it to pick and choose when to serve the statement noting the death and, thereby, start the clock.

As an initial matter, there is no language in Marcus or Rule 25(a) itself to even intimate that the Rule's requirements should differ when the decedent is the defendant, as opposed to the plaintiff. Id. at 43–45; see Silas, 55 F.4th at 877 (rejecting identical argument and explaining that "the text of Rule 25 does not distinguish between plaintiffs and defendants"). What's more, Granderson's assertions that Universitas sat on its hands "for four years" and had "perpetual and unlimited control of the 90-day clock" are completely belied by the record. While Universitas did have knowledge that Granderson was the executrix, it hardly sat on its hands for years given that it actively engaged in litigation against Granderson, Novak, and Heathington to determine the proper party to substitute. Additionally, it filed countless motions to continue the ninety-day deadline. It was also the district court who was in the driver's seat vis-á-vis the running of the ninety-day clock because it was the district court who ordered Universitas to serve Granderson by a specific date. Accordingly, we reject Granderson's first argument that the ninety-day clock began to run in April 2019 or whenever Universitas learned of the Will and of Granderson's role as the executrix.

Having thrown Granderson's first argument in the bin, we turn our attention to her remaining two arguments, neither of which do the trick. Granderson's next argument is essentially a recycling of her first, but with a new coat of paint. She (confusingly) argues that the ninety-day clock began to run when Marcus filed the Notice of Suggestion of Death on November 28, 2017.[29] Because Universitas did not file its motion to substitute for years after that, Granderson argues Rule 6(b)(1)(B)'s good-cause requirement applied here. To support that argument, she looks to the Advisory Committee's Note to the 1963 Amendment to Rule 25(a), which states:

> The amended rule establishes a time limit for the motion to substitute based not upon the time of the death, but rather upon the time information of the death as provided by the means of a suggestion of death upon the record, i.e., service of a statement of the fact of the death. The motion may not be made later than 90 days after the service of the statement unless the period is extended pursuant to Rule 6(b), as amended.

Fed. R. Civ. P. 25 advisory committee's note to 1963 amendment (internal citations omitted). Setting aside the aforementioned forfeiture and waiver issues,[30] the Advisory Committee's Note, in

---

[29] We say "confusingly" because she just argued that the clock should have started running when Universitas learned Granderson was the executrix in April 2019.

[30] Adding onto those previous forfeiture and waiver issues, the instant argument is also waived because it appears only in

- 34 -

our view, undermines Granderson's claim, rather than supports it. It clearly states that "[t]he motion may not be made later than 90 days after the service of the statement unless the period is extended pursuant to Rule 6(b)," and we explained in Marcus that service of the statement must be made on the decedent's representative of successor. Id. (emphasis ours); Marcus, 80 F.4th at 43–44. So, even though Universitas had received and been served with the Notice of Suggestion Death in November 2017, Granderson had not and that makes all the difference. Marcus explicitly held that "for the 90-day clock to begin running under Rule 25, the suggesting party must properly serve both the other parties and a nonparty successor or personal representative of the deceased with a notice of death." Marcus, 80 F.4th at 44 (emphasis ours). Accordingly, because the Notice of Suggestion of Death was not served on Granderson back in 2017 when it was filed on the district court's docket, the ninety-day clock did not start running and no good-cause showing under Rule 6(b)(1)(B) was required.

As a last-ditch effort, Granderson contends that it would be unfair to allow substitution because nearly six years have passed since Robinson's death and, in the interim, she "has

---

Granderson's reply brief. Brox, 83 F.4th at 97 n.2 ("They do make this assertion in their reply brief, but arguments not made in an opening brief on appeal are deemed waived." (citation omitted)).

aged further and her physical and medical limitations [have] worsened over time." While we are sympathetic to Granderson's health issues, this argument is also forfeited and waived for the reasons stated above. Moreover, despite these health issues, Granderson's filings, both pro se and counseled, demonstrate that she is still able to litigate this case.

Ultimately, having parried all of Granderson's contentions, we determine that she was served in accordance with Rule 25(a) and our caselaw, so we discern no abuse of discretion in the district court's decision subbing her into the case.[31]

---

[31] Before moving on, there's one wrinkle concerning substitution that we must address. Elsewhere, and separately in her briefing, Granderson suggests that the district court should not have ordered her substitution because it is "moot," as the estate is insolvent and life insurance proceeds are not part of the estate. To the extent Granderson uses the word "moot" in the jurisdictional sense to challenge our authority to decide this appeal, that argument fails. See, e.g., Mission Prod. Holdings v. Tempnology, LLC, 139 S. Ct. 1652, 1661 (2019) ("Here, Tempnology notes that the bankruptcy estate has recently distributed all of its assets, leaving nothing to satisfy Mission's judgment. But courts often adjudicate disputes whose practical impact is unsure at best, as when a defendant is insolvent. And Mission notes that if it prevails, it can seek the unwinding of prior distributions to get its fair share of the estate. So although this suit may not make [Mission] rich, or even better off, it remains a live controversy -- allowing us to proceed." (alteration in original) (citations and internal quotation marks omitted)); Chafin v. Chafin, 568 U.S. 165, 175-76 (2013) ("[T]he fact that a defendant is insolvent does not moot a claim for damages."). And to the extent Granderson is arguing that ordering her substitution would not be fruitful for Universitas and thus the district court's decision was an abuse of discretion, that argument was forfeited by failing to timely oppose the motion to substitute below, Crispin-Taveras, 647 F.3d at 7, waived for failing to address plain

*Motion for Default Judgment*

While Granderson's arguments regarding substitution didn't get her a win, she has better luck with her arguments regarding default judgment. When you get right down to it, she basically argues that the district court erred because default judgment is entered only after entry of default, which requires that the party have failed to plead or otherwise defend, and neither Robinson nor she failed to plead or otherwise defend. In Granderson's mind, Robinson pleaded and defended the case, so entering default against him was inappropriate simply because he died and (obviously) stopped defending himself. For her part, she argues she certainly defended the case both before and after her substitution, as evidenced by her numerous appearances and filings on the docket (six in total). Thus, according to Granderson, the district court abused its discretion in granting Universitas' motion. We agree for reasons we'll get into after we take two beats, the first to explain our standard of review and the second to lay out the default judgment process.

---

error's four prongs, Colón-De Jesús, 85 F.4th at 25, and doubly waived for "failing to cite any authority whatsoever in support of [her]" assertion that ordering substitution under these circumstances constitutes an abuse of discretion, Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017).

"We review orders entering default judgment for abuse of discretion." In re MacPherson, 254 B.R. 302, 305 (B.A.P. 1st Cir. 2000). Within that review, we may also review "the interlocutory entry of default." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). As before, the same examples of abuses of discretion apply here. See In re MacPherson, 254 B.R. at 305. One relevant example of an abuse of discretion worth repeating is ignoring "a material factor deserving significant weight." Id. (citation omitted).

Turning to the ins and outs of default judgments, Rule 55 provides a two-step process for default judgment. Fed. R. Civ. P. 55(a)-(b). Step one is entry of default under Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Step two is entry of default judgment under Rule 55(b), which provides that such a judgment can be entered by the clerk, assuming certain conditions are met, and otherwise by the court. Fed. R. Civ. P. 55(b). To spell it out, the clerk may enter default judgment if the claim is for a sum certain, if the clerk has been given an affidavit of the amount due, and provided that entry of default has been entered against a person (who is neither a minor

nor an incompetent person) for failure to appear.  Fed. R. Civ. P. 55(b)(1).  In any other circumstance, an application or motion for default judgment must be made directly to the court.  Fed. R. Civ. P. 55(b)(2).  Importantly, "[p]rior to obtaining a default judgment under [Rule 55(b)], there must be an entry of default as provided by Rule 55(a)."  $23,000 in U.S. Currency, 356 F.3d at 168 n.15 (second alteration in original) (citation omitted); see also 10A Charles Alan Wright, Arthur R. Miller, Mary K. Kane & Adam N. Steinman, Federal Practice and Procedure § 2682 (4th ed. 2023).

A defaulted party is deemed "to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999). Notwithstanding that concession, the district court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcón v. Autoridad de Energía Eléctrica, 301 F.3d 1, 2 (1st Cir. 2002) (citation omitted).  While "[a] hearing may be required . . . to set damages when the amount is in dispute or is not ascertainable from the pleadings," the district court can also order a default judgment "without a hearing of any kind," assuming it "has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim

for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002) (citations omitted).  On that score, the district court may also "choose to hold a hearing to establish the truth of any averment in the complaint." Id. at 114-15 (citation and internal quotation marks omitted).

All that said, default judgment is a "drastic" measure "that runs contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results." Remexcel Managerial Consultants, Inc. v. Arlequín, 583 F.3d 45, 51 (1st Cir. 2009) (citations and internal quotation marks omitted).  As such, it "should be employed only in an extreme situation," Stewart v. Astrue, 552 F.3d 26, 28 (1st Cir. 2009) (citation omitted), and to protect diligent parties from clearly unresponsive adversaries, see Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 63 (1st Cir. 2002) (citing H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Applying this rubric here,[32] we think the district court abused its discretion by entering default judgment against

---

[32] At the outset, we note that a party can move under Rule 55(c) to set aside both entry of default and default judgment. Fed. R. Civ. P. 55(c).  While entry of default can be set aside for good cause, default judgment can only be set aside for specific reasons outlined in Rule 60(b), including mistake, excusable neglect, newly discovered evidence, fraud, voidness, satisfaction of judgment, or "any other reason that justifies relief." Fed. R.

Granderson because such a judgment can only be entered after entry
of default.  In the case at bar, though, no entry of default had
ever been entered against Granderson and no entry of default could
have been entered against her because (contrary to Universitas'
argument) she did "otherwise defend" the lawsuit.  A simple once-
over of the district court's docket shows why that is so.  The
only entry of default in the record was against Robinson (who is,

---

Civ. P. 55(c); Fed R. Civ. P. 60(b).  Here, Granderson never moved
to set aside the entry of default or default judgment under Rule
55(c) and/or Rule 60(b).  Our caselaw suggests no such motion was
required, see $23,000 in U.S. Currency, 356 F.3d at 163
(characterizing a Rule 55(b) default judgment as a 'final
disposition of the case and an appealable order'" (citation
omitted)); In re MacPherson, 254 B.R. at 303-05 (reviewing appeal
of default judgment, because it "is a final order, ripe for our
review" (quoting In re Zeitler, 221 B.R. 934, 936 (B.A.P. 1st Cir.
1998))); see also Stelly v. Duriso, 982 F.3d 403, 407 (5th Cir.
2020) (holding "that a party's failure to file a motion to set
aside a default judgment in the district court does not prevent
the party from appealing that judgment"), and neither party makes
an argument to the contrary, but see Stelly, 982 F.3d 403, 407 n.4
(5th Cir. 2020) (collecting cases describing different approach of
circuits on whether defaulting parties must move under Rule
55(c)/Rule 60(b) prior to appeal); In re Taylor, 496 B.R. 28, 36
n.31 (B.A.P. 10th Cir. 2013) (same).  Although Universitas does
cite the factors an appellate court must consider when reviewing
an appeal of a Rule 55(c) and/or Rule 60(b) motion, it cites no
case of ours to suggest that we must treat an appeal from a Rule
55(b) default judgment as an appeal from a Rule 55(c) motion or a
Rule 60(b) motion.  Our review, therefore, is not for "whether the
district court abused its discretion in declining to vacate the
default judgment, but [rather for] whether it abused its discretion
in granting a default judgment in the first instance." City of
New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir.
2011); see also Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86
F.3d 852, 856 (8th Cir. 1996) (same).

emphatically, not Granderson), and Universitas never moved for entry of default against her once she had been subbed into the case.

Furthermore, just as Granderson argues in her brief, she appeared six times total in the case and filed substantive motions challenging the proceedings. Notably, the majority of these appearances and filings occurred before Granderson was ever even subbed into the case and had any formal obligation to respond as a party to the litigation. While there can certainly be scenarios in which, despite a party's appearances or filings, default judgment might still be appropriate, "[d]efault judgment for failure to defend is appropriate when the party's conduct includes 'willful violations of court rules, contumacious conduct, or intentional delays.'" Ackra Direct Mktg. Corp., 86 F.3d at 856 (quoting United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre, 983 F.2d 128, 130 (8th Cir. 1993)). It is not appropriate where the party's conduct amounts to "a 'marginal failure to comply with time requirements.'" Id. (quoting Harre, 983 F.2d at 130). Indeed, our own caselaw reflects as much. See Alameda v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1044, 1048 (1st Cir. 1980) ("[T]he Secretary's failure to file the requested memoranda or even explain the failure after months of delay, amounted to a failure under [Federal Rule of Civil Procedure] 55(a) to 'otherwise

defend' the suit." (citations omitted)).  Nothing in the record even suggests that Granderson engaged in such conduct.

To be sure, we concede that some of Granderson's filings might not have been as clear or as artful as Universitas or the district court might have liked and that her opposition to the motion to substitute was untimely.  But these purported failings must be viewed in context.  Several of her filings were pro se, which "are subject to 'less stringent standards than formal pleadings drafted by lawyers.'"  In re Flynn, 582 B.R. 25, 31 (B.A.P. 1st Cir. 2018) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  Her untimely opposition to Universitas' motion to substitute was merely days late and did not amount to "months of delay."  Alameda, 622 F.2d at 1048.  To boot, once Granderson had been substituted into the case, there were no pending motions for her to respond to and, once Universitas filed its second motion for default judgment, she timely opposed that motion, thereby "defend[ing]" the only thing in the record that she could have defended.  And the greater context of the whole case demonstrates that Granderson, soon after Robinson's passing, informed Marcus of the Will and her role as executrix and that, over the six years of litigation following Robinson's passing, she made several substantive filings on the record (including opposing both of Universitas' motions for default judgment) and consistently raised

her concerns to the district court that no party had been subbed into the case.  Under these particular case circumstances, we believe the district court abused its discretion in granting default judgment against Granderson.

Our conclusion finds further support in the fact that the district court did not explain why it thought default judgment was appropriate in this scenario.  The district court's default judgment merely states that default judgment was entered because "Robinson . . . and his Estate, through substituted party Lillian Granderson, . . . failed to plead or otherwise defend in this action."  Nowhere does the district court acknowledge Granderson's multiple appearances and filings or even explain why, despite her multiple appearances and filings, she should still be considered to have "failed to . . . otherwise defend."  As we've noted in the past, "ignor[ing]" such "a material factor deserving significant weight" is an abuse of discretion, plain and simple.  In re MacPherson, 254 B.R. at 305 (citation omitted) (concluding issuance of default judgment "would have to be remanded" where "the court failed to weigh factors pertinent to its decision").

Recognizing that it's on the losing end of this default judgment scenario, Universitas attempts to counter with three arguments -- none of which is a silver bullet.  First, it argues that Granderson forfeited any challenge to the default judgment

because her opposition to that motion below merely incorporated by
reference the arguments in her opposition to the motion to
substitute.  According to Universitas, therefore, we should review
her argument that she otherwise defended for plain error and,
because she didn't address plain error's four prongs, we should
consider that argument waived.  Put simply, we don't buy any of
what Universitas is selling.  It cites no First Circuit caselaw
for the proposition that incorporated-by-reference filings before
the district court amount to forfeiture below.  And we are aware
of none.  Universitas does, however, cite to an unpublished case
from the Sixth Circuit, where our sister circuit concluded that
"it is well settled that a party forfeits skeletal arguments, and
presenting the district court with only incorporated-by-reference
filings did just that." United States v. Rich, No. 18-2268, 2021
WL 4144059, at *40 (6th Cir. Sept. 13, 2021) (internal citation
omitted).  But that case involved markedly different circumstances
than are at issue here.  There, the defendants (plural) filed a
joint motion, which "adopt[ed] and incorporat[ed] by reference
numerous written and oral motions and objections that they had
lodged with the district court throughout trial." Id. Displeased,
the district court "denied the motion in one paragraph, noting
their incorporation by reference was improper -- it pointed to no
specific allegation of error . . . and did not articulate any form

of reasoned analysis giving context to their motion." Id. (cleaned up).  On the other hand, when this case was before the district court, Granderson (singular) incorporated only one filing, and that filing had paragraphs specifically geared towards the propriety of default judgment and "g[ave] context to [her opposition]." Id.  Plus, this is not a case in which Granderson merely incorporated a district-court filing in her briefing to us; rather, she clearly raised her argument in her appellate briefing. In our view, therefore, Granderson's arguments were not forfeited below and were not waived on appeal.

Second, Universitas argues that, "[w]hile it is true that Mr. Robinson did originally litigate the case, after his death he and his representatives did not," because Granderson's filings were otherwise untimely and threadbare.  We are not persuaded.  To begin, the implication that Robinson could have continued to litigate the case after his death makes no sense.  More to the point, it is unclear to us how Granderson could have litigated, or could have been reasonably expected to litigate, the case prior to her substitution into the case.  Furthermore, we have already concluded, as previously discussed, that Granderson's actions amount to "otherwise defend[ing]" as contemplated by Rule 55.

Third, and for its swan song, Universitas argues that we should not reverse the default judgment because its "Motion for

Default Judgment matched the requirements of Rule 55" by providing the necessary affidavits and service.  There is, quite simply, no merit to this argument because Universitas let other procedural requirements fall by the wayside.  As we mentioned above, "[p]rior to obtaining a default judgment under [Rule 55(b)], there must be an entry of default as provided by Rule 55(a)."  $23,000 in U.S. Currency, 356 F.3d at 168 n.15 (second alteration in original) (citation omitted).  And here, there were several things wrong with the entry of default (many of which we've hinted to already).

Laying those mistakes on the table, Universitas first moved for the clerk of the district court to enter default under Rule 55(a) against Robinson's estate, even though no one had been substituted into the case yet to represent the estate.  The clerk then entered default against Robinson (not his estate or Granderson), even though he had been dead and very clearly defended himself prior to his passing.  To add on top of that, Universitas moved for default judgment under Rule 55(b) against Granderson before securing an entry of default under Rule 55(a) against her in her representative capacity or otherwise.  We are aware of no caselaw that allows for default judgment under these circumstances or any caselaw that would allow Universitas to impute the Rule 55(a) entry of default against Robinson to Granderson.  Universitas proffered none below or in its briefing on appeal.  And even though

we raised these defects ourselves at oral argument, Universitas did not even attempt to proffer some support through a Rule 28(j)[33] letter.  Accordingly, contrary to Universitas' contentions, its motion for default judgment was procedurally improper because no entry of default was on the books against Granderson, as required by the rule and our caselaw.  Fed. R. Civ. P. 55(a)-(b); _$23,000 in U.S. Currency_, 356 F.3d at 168 n.15 (explaining that default judgment cannot be entered without first entering entry of default).  This is another reason why the district court abused its discretion in granting default judgment.  See _Triantos_ v. _Guaetta & Benson, LLC_, 52 F.4th 440, 445 (1st Cir. 2022) (concluding district court abused its discretion where it did not comply with the procedural requirements of Rule 11 before imposing sanctions).

All told, we conclude that the district court abused its discretion in entering default judgment against Granderson, where she defended the case and no entry of default had been entered against her.

---

[33] Federal Rule of Appellate Procedure 28(j) allows litigants appearing before us to "promptly advise the circuit clerk by letter" with any "pertinent and significant authorities [that] come to a party's attention after the party's brief has been filed -- or after oral argument but before decision."  Fed. R. App. P. 28(j).

**The Wrap-Up**

Having reasoned through all the issues, we make official the conclusion we previewed above:  We <u>affirm</u> the district court as to substitution, <u>vacate</u> the default judgment, and remand this matter back to the district court for further proceedings consistent with this opinion.  The parties shall bear their own costs.